**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVIS HUDSON, | ) NO. CV 15-9999-MWF(E) |
| | ) |
|                Petitioner, | ) |
| | ) |
|    v. | ) REPORT AND RECOMMENDATION OF |
| | ) |
| R.L. GOWER, Warden, | ) UNITED STATES MAGISTRATE JUDGE |
| | ) |
| | ) |
|               Respondent. | ) |
| _____ | ) |

    This Report and Recommendation is submitted to the Honorable Michael W. Fitzgerald, United States Senor District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on December 30, 2015.  Respondent filed an Answer on March 25, 2016.  Petitioner filed a Reply on April 14, 2016.

///

**BACKGROUND**

A jury found Petitioner guilty of one count of first-degree burglary, two counts of assault with a deadly weapon and one count of forcible sexual penetration by a foreign object (Reporter's Transcript ("R.T.") 1803-06).  The jury also found true an enhancement allegation that the Petitioner committed the forcible sexual penetration during the burglary (R.T. 1804-06).  On direct appeal, Petitioner argued that the evidence was insufficient to establish the intent element of burglary (Lodgments 3 and 5).  Petitioner argued that, at the time he entered the victim's apartment, Petitioner had no intent to assault the victim with a deadly weapon (id.).  In a reasoned decision, the California Court of Appeal rejected Petitioner's arguments and found the evidence sufficient (Lodgment 6).  The California Supreme Court summarily denied Petitioner's petition for review (Lodgments 7 and 8). In the present proceeding, Petitioner again argues that the evidence was insufficient to establish the intent element of burglary.

**SUMMARY OF TRIAL EVIDENCE**

The following summary is taken from the opinion of the California Court of Appeal in People v. Hudson, 2015 WL 4086314 (Cal. App. July 7, 2015) (Lodgment 6).  See Runningeagle v. Ryan, 686 F.3d 758, 763 n.1 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013) (presuming correct statement of facts drawn from state court decision); Slovik v. Yates, 556 F.3d 747, 749 n.1 (9th Cir. 2009) (taking factual summary from state court decision).

///

 1          Defendant began dating C.H. while they were both
 2     working for Delta Airlines.  During their relationship,
 3     defendant helped C.H. find and pay for an apartment.
 4     Defendant also purchased two televisions for C.H. to put in
 5     this apartment.  On the morning of June 20, 2013, C.H. had a
 6     phone conversation with defendant in which she told him she
 7     "needed space."  Defendant asked her to return the TVs, but
 8     C.H. refused because she believed they were a gift.
 9
10          Defendant continued to send C.H. text messages
11     throughout the day, in which he told her he would come to
12     her apartment later that day.  C.H. grew uneasy due to the
13     text messages and an incident that day at work where she saw
14     defendant near her work area after she told him to stay
15     away.  C.H. alerted her supervisors to the situation, and
16     one of the supervisors followed her home.
17
18          That evening, defendant came to C.H.'s apartment with
19     two sheriff's deputies, intending to retrieve the TVs.  C.H.
20     told the deputies that she did not have any property
21     belonging to defendant, and the deputies told defendant he
22     would have to go through civil court to obtain the TVs.
23     Defendant continued to text C.H. that night.  Defendant sent
24     a text saying, "I have nothing else to lose.  Smart move."
25     C.H. felt that defendant was threatening her with "more
26     consequences."  She asked, "Is that a threat?"  Defendant
27     did not respond.
28     ///

Around 11:45 p.m., defendant returned to C.H.'s apartment building, grabbed a hammer from the backseat of his car, and climbed up to C.H.'s balcony.  He used the hammer to break the lock on her window and kicked through the glass.  Once inside the apartment, defendant went into C.H.'s bedroom, where C.H. was talking on the phone to her ex-boyfriend.  Defendant swung the hammer at C.H., but she blocked it from hitting her and knocked the hammer out of his hand.

Defendant then dragged C.H. from her bed, punched her in the face several times, and strangled her until she passed out.  When C.H. regained consciousness, defendant again assaulted her, this time with a knife from her kitchen.  C.H. blocked the knife, and after a struggle defendant dropped the knife.  Defendant then forcefully inserted his fingers into C.H.'s vagina.  When C.H. screamed, defendant told her to shut up and again strangled her until she passed out.

When C.H. regained consciousness again, she ran toward the front door, where defendant grabbed her.  C.H. attempted to break free, and defendant slammed her down into the broken glass by the balcony, where he strangled her for a third time until she passed out.  When C.H. regained consciousness, she escaped her apartment by climbing over her balcony onto a neighboring apartment's balcony.  Defendant's entire attack took about 10 minutes.

1      At trial, defendant denied wanting to physically
2   assault C.H. when he entered her apartment.  He admitted
3   that he "got really mad" and felt "taken advantage of."  He
4   stated that seeing his boss at the apartment with C.H. when
5   he went to retrieve the TVs upset him because he felt like
6   he would not be able to return to work.  He also claimed
7   that once he climbed up to her balcony, he heard C.H.
8   talking on the phone to her ex-boyfriend, which "got me to
9   have the overdrive to do what I did."  He admitted that when
10  he entered C.H.'s apartment, it was not about the TVs
11  anymore.  He also admitted that he went in the apartment to
12  hurt C.H.  When asked what he meant by "hurt," defendant
13  said, "As far as you go through all these emotions that I
14  felt, so I wanted to physically, just, uh."  However, he
15  then stated that physically assaulting C.H. was "the
16  furthest thing from my mind" when he entered the apartment.
17  Defendant denied assaulting C.H. with the hammer or knife,
18  saying that he threw both aside willingly.

19

20  (People v. Hudson, 2015 WL 4086314, at *1-2; Lodgment 6 at 2-4).

21

22                         **STANDARD OF REVIEW**

23

24  Under the "Antiterrorism and Effective Death Penalty Act of 1996"
25  ("AEDPA"), a federal court may not grant an application for writ of
26  habeas corpus on behalf of a person in state custody with respect to
27  any claim that was adjudicated on the merits in state court
28  proceedings unless the adjudication of the claim:  (1) "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer, 537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision on the merits.  Greene v. Fisher, 132 S. Ct. 38, 44 (2011); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  A state court's decision is "contrary to" clearly established Federal law if:  (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts . . . materially indistinguishable" from a decision of the Supreme Court but reaches a different result.  See Early v. Packer, 537 U.S. at 8 (citation omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced."  Lockyer v. Andrade, 538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti, 537 U.S. at 24-26 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law

1  to the facts).

2

3      "In order for a federal court to find a state court's application

4  of [Supreme Court] precedent 'unreasonable,' the state court's

5  decision must have been more than incorrect or erroneous." Wiggins v.

6  Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state

7  court's application must have been 'objectively unreasonable.'" Id.

8  at 520-21 (citation omitted); see also Waddington v. Sarausad, 555

9  U.S. 179, 190 (2009); Davis v. Woodford, 384 F.3d 628, 637-38 (9th

10  Cir. 2004), cert. dism'd, 545 U.S. 1165 (2005).  "Under § 2254(d), a

11  habeas court must determine what arguments or theories supported,

12  . . . or could have supported, the state court's decision; and then it

13  must ask whether it is possible fairminded jurists could disagree that

14  those arguments or theories are inconsistent with the holding in a

15  prior decision of this Court." Harrington v. Richter, 562 U.S. 86,

16  101 (2011).  This is "the only question that matters under §

17  2254(d)(1)." Id. at 102 (citation and internal quotations omitted).

18  Habeas relief may not issue unless "there is no possibility fairminded

19  jurists could disagree that the state court's decision conflicts with

20  [the United States Supreme Court's] precedents." Id.  "As a condition

21  for obtaining habeas corpus from a federal court, a state prisoner

22  must show that the state court's ruling on the claim being presented

23  in federal court was so lacking in justification that there was an

24  error well understood and comprehended in existing law beyond any

25  possibility for fairminded disagreement." Id. at 103.

26

27      In applying these standards, the Court looks to the last reasoned

28  state court decision, here the decision of the California Court of

1   Appeal.   See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.

2   2008).

3

4                              **DISCUSSION**

5

6   **I.   Governing Legal Principles**

7

8        On habeas corpus, the Court's inquiry into the sufficiency of

9   evidence is limited.   Evidence is sufficient unless the charge was "so

10  totally devoid of evidentiary support as to render [Petitioner's]

11  conviction unconstitutional under the Due Process Clause of the

12  Fourteenth Amendment."   Fish v. Cardwell, 523 F.2d 976, 978 (9th Cir.

13  1975), cert. denied, 423 U.S. 1062 (1976) (citations and quotations

14  omitted).   A conviction cannot be disturbed unless the Court

15  determines that no "rational trier of fact could have found the

16  essential elements of the crime beyond a reasonable doubt."   Jackson

17  v. Virginia, 443 U.S. 307, 317 (1979).   A verdict must stand unless it

18  was "so unsupportable as to fall below the threshold of bare

19  rationality."   Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012).

20

21       Jackson v. Virginia establishes a two-step analysis for a

22  challenge to the sufficiency of the evidence.   United States v.

23  Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).   "First, a

24  reviewing court must consider the evidence in the light most favorable

25  to the prosecution."   Id. (citation omitted); see also McDaniel v.

26  ///

27  ///

28  ///

Brown, 558 U.S. 120, 133 (2010).[1]  At this step, a court "may not
usurp the role of the trier of fact by considering how it would have
resolved the conflicts, made the inferences, or considered the
evidence at trial."  United States v. Nevils, 598 F.3d at 1164
(citation omitted).  "Rather, when faced with a record of historical
facts that supports conflicting inferences a reviewing court must
presume - even if it does not affirmatively appear in the record -
that the trier of fact resolved any such conflicts in favor of the
prosecution, and must defer to that resolution."  Id. (citations and
internal quotations omitted); see also Coleman v. Johnson, 132 S. Ct.
at 2064 ("Jackson leaves [the trier of fact] broad discretion in
deciding what inferences to draw from the evidence presented at trial,
requiring only that [the trier of fact] draw reasonable inferences
from basic facts to ultimate facts") (citation and internal quotations
omitted); Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("it is the
responsibility of the jury — not the court — to decide what
conclusions should be drawn from evidence admitted at trial").  The
State need not rebut all reasonable interpretations of the evidence or
"rule out every hypothesis except that of guilt beyond a reasonable
doubt at the first step of Jackson [v. Virginia]."  United States v.
Nevils, 598 F.3d at 1164 (citation and internal quotations omitted).
Circumstantial evidence and the inferences drawn therefrom can be
sufficient to sustain a conviction.  Ngo v. Giurbino, 651 F.3d 1112,
1114-15 (9th Cir. 2011).

---

[1]    The Court must conduct an independent review of the
record when a habeas petitioner challenges the sufficiency of the
evidence.  See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir.
1997).

At the second step, the court "must determine whether this evidence, so viewed, is adequate to allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." United States v. Nevils, 598 F.3d at 1164 (citation and internal quotations omitted; original emphasis).  A reviewing court "may not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Id. (citations and internal quotations omitted; original emphasis).

In applying these principles, a court looks to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Constitution requires to prove the offense "is purely a matter of federal law." Coleman v. Johnson, 132 S. Ct. at 2064.

"Burglary is defined as the entry of a structure with the intent to commit theft or any felony." People v. Moody, 59 Cal. App. 3d 357, 363, 131 Cal. Rptr. 923 (1976); see Cal. Penal Code § 459.  A defendant commits burglary when he or she enters a building with the requisite intent, regardless of whether he or she actually commits the underlying felony intended.  See People v. Soto, 53 Cal. 415, 415, 3 P.C.L.J. 56 (1879); People v. Sullivan, 271 Cal. App. 2d 531, 543, 77 Cal. Rptr. 25 (1969), cert. denied, 396 U.S. 973 (1969).  The requisite intent "is rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances disclosed by the evidence." People v. Holt, 15 Cal. 4th 619, 669, 663 Cal. Rptr. 2d 782, 937 P.2d 213, cert. denied, 522 U.S. 1017 (1997) (citations omitted).

## II.  <u>Analysis</u>

     Viewed in the light most favorable to the prosecution, the
evidence introduced at Petitioner's trial demonstrated: on the day in
question, the victim was attempting to distance herself from a
previously intimate relationship with Petitioner; Petitioner felt
himself financially and emotionally exploited and betrayed by the
victim; the victim told Petitioner to stay away from her, but
Petitioner refused to do so; on the night in question, Petitioner
attempted to reclaim property from the victim's apartment, but the
victim frustrated Petitioner's efforts; in the process, the victim
involved Petitioner's manager in the dispute, and Petitioner feared
that this involvement jeopardized Petitioner's employment status;
Petitioner then sent the victim a text message which, in context,
reasonably could be interpreted as a threat; late that same night,
Petitioner angrily returned to the victim's apartment carrying a
hammer, and Petitioner gained unauthorized entry into the apartment;
mere seconds after the entry, Petitioner swung the hammer at the
victim; for the next several minutes, Petitioner brutalized the
victim, punching her in the face, attacking her with a knife, choking
her into unconsciousness multiple times, sexually penetrating her and
slamming her down on a floor littered with broken glass (R.T. 640-42,
645-56, 658, 660-64, 670, 673-76, 1290, 1292-93, 1296-97, 1300, 1311-
16, 1507, 1512).

     From this evidence, a rational jury could conclude beyond a
reasonable doubt that, at the time Petitioner gained entry, Petitioner
intended to assault the victim with a deadly weapon.  See <u>People v.</u>

Clifton, 148 Cal. App. 2d 276, 277-79, 306 P.2d 545 (1957) (intent to commit assault with a deadly weapon upon entry into apartment inferred from the defendant's anger, threats, and use of a tire iron to vandalize the apartment after the object of the defendant's anger had fled from the apartment); see also Garrett v. Uribe, 2010 WL 2854301, at *7 (C.D. Cal. June 15, 2010), adopted, 2010 WL 2891533 (C.D. Cal. July 19, 2010) (rational jury reasonably could have inferred the requisite intent from, among other evidence, the defendant's conduct before and after entry); State v. Bronson, 10 N.C. App. 638, 179 S.E. 2d 823, 825 (1971) ("the intent with which defendant broke and entered, or entered, may be found by the jury from what he did within the building"); People v. Jones, 211 Cal. App. 2d 63, 71-72, 27 Cal. Rptr. 429 (1962) ("there is no better proof that a burglar entered with the intent to commit [a particular crime] than a showing that he did commit [that particular crime]").

Petitioner argues contrary inferences from the evidence and also attempts to impugn the credibility of the victim.  However, this Court can neither reweigh the evidence nor redetermine issues of credibility resolved by the jury.  See Bruce v. Terhune, 376 F.3d 950, 958 (9th Cir. 2004) (federal habeas court could not revisit the jury's resolution of inconsistencies between the victim's testimony and the testimony of other witnesses); United States v. Franklin, 321 F.3d 1231, 1239-40 (9th Cir.), cert. denied, 540 U.S. 858 (2003) (same); see also People v. Morales, 19 Cal. App. 4th 1383, 1391, 24 Cal. Rptr. 2d 847, 852 (1993) (trier of fact entitled to disbelieve defendant's self-serving testimony regarding intent at the time of an unauthorized entry).

1    Petitioner argues there is no proof that he verbally threatened
2    the victim during the few seconds that elapsed between Petitioner's
3    unauthorized entry and his swinging of the hammer at the victim.  No
4    such proof is essential.  Persons who intend assaults do not always
5    warn their intended victims in advance.  See, e.g., Pashby v.
6    Universal Dredging Corp., 608 F.2d 1312, 1313 (9th Cir. 1979); see
7    also F.J.W. Enterprises, Inc. v. Johnson, 746 So. 2d 1145, 1146 n.1
8    (Fla. App. 1999) ("by their very nature assaults usually occur
9    suddenly and without warning and without giving an opportunity to
10   defend") (citations and quotations omitted).

11

12   Petitioner also appears to argue that, because of the
13   considerable interval of time between his crimes and his trial,
14   Petitioner's testimonial admission he had wanted to hurt the victim
15   should be deemed irrelevant to the issue of Petitioner's intent at the
16   time of entry.  Such argument finds no support in logic or precedent.
17   See, e.g., People v. Cain, 10 Cal. 4th 1, 40 Cal. Rptr. 2d 481, 498,
18   892 P.2d 1224, 1241 (1995), cert. denied, 516 U.S. 1077 (1996)
19   (defendant's subsequent admission to police that he had entered the
20   victim's residence for a particular criminal purpose "proved his
21   specific intent to commit burglary").  Moreover, the trial evidence
22   was constitutionally sufficient to prove the requisite intent, with or
23   without admissions by Petitioner.

24

25   Accordingly, the California Court of Appeal's rejection of
26   Petitioner's challenge to the sufficiency of the evidence was not
27   contrary to, or an objectively unreasonable application of, any
28   "clearly established Federal Law, as determined by the United States

13

1  Supreme Court."  See 28 U.S.C. § 2254(d); Harrington v. Richter, 562

2  U.S. 86, 100-03 (2011).  Petitioner is not entitled to federal habeas

3  relief.

4

5                              **RECOMMENDATION**

6

7       For the reasons discussed above, IT IS RECOMMENDED that the Court

8  issue an order:  (1) accepting and adopting this Report and

9  Recommendation; and (2) denying and dismissing the Petition with

10 prejudice.

11

12      DATED: May 4, 2016.

13

14

                              _____
15                                      /s/
                                  CHARLES F. EICK
16                      UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE</u>**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability.  Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.